Sue Ellen Tatter
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 W. Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        vs.<br><br>DANIEL TAN,<br><br>                Defendant. | NO. 3:06-cr-0029-JWS<br><br>**SENTENCING MEMORANDUM<br>OF THE DEFENSE** |

       The defendant, DANIEL TAN, through counsel, presents this memorandum for the imposition of sentence set for July 27, 2006, at 8:30 a.m.  The defense has given notice that Mr. Tan intends to call Natividad Waldman, his mother, as a witness to mitigating circumstances in this case.

       Two letters of support are attached (Exhibit A), one from employee David Rogne and one from a family friend, Deborah Amaolo.

I.      **INTRODUCTION**

Daniel Tan is a 33-year-old naturalized Canadian citizen with no criminal record. He was born in the Philippines and later emigrated to Canada. The family in the Philippines was very poor. His mother left the Phillippines when Dan was young so that she could work in Canada and send money back to the family. However, as often happens during migration, the family gained in money but lost in nurture and well-being. Dan was left in the care of a grandfather and uncles. He was treated harshly and forced to do hard work as a child. As a result, he has suffered from low self-esteem and depression.

When Dan was 13, his mother married a Canadian, and the couple sponsored Dan's move to Canada. He arrived in Calgary and met his "new dad," who soon died of a heart ailment. Dan attended school, got his high school diploma and took a few college courses. He worked steadily. He worked in a cleaning service run by his mother, at Emercor, a siding/insulation factory, and also did computer work. As his mother will testify, he worked almost constantly. His employer at Emercor has written a letter attesting to his serious work ethic (<u>See</u>, Exhibit A).

But Dan had a very bad social life. He is short (5' 3"), slight and shy, and felt he could not interest girls. His mother urged him to take dancing lessons, but Dan was so shy he would not take group lessons, only private lessons. Like many others with poor self-images, he turned to chat rooms, and particularly chat rooms where people met to describe childhood abuse and look for soul-mates. Without the judgmental focus of live,

physical meetings, many awkward individuals feel they can communicate with others in chat rooms.

Dan Tan has never been arrested prior to this case. There are no incidents of inappropriate sexual contact. He lived with his mother, worked steadily and chatted in his spare time.

## II.     GUIDELINES CALCULATIONS AND DISPUTES

The base level under the sentencing guidelines, U.S.S.G. § 2G2.2(a)(2), is 22. There is no dispute about certain enhancements: two levels for use of a computer, two levels for representations of minors under age 12, and four levels for the type of images. The defense also does not dispute the enhancement for the number of images, but notes that there is a two-level enhancement for 10-150 images, and this case involves just 24 images.

The prosecution and defense disagree about whether there should be an enhancement of five levels for distribution in exchange for a "thing of value" under U.S.S.G. § 2G2.2(b)3)(B).

### A.     "Thing of Value"

Daniel Tan sent pornographic images to a person he thought was "Julie," a participant in a chat room relating to incest. He admits sending them, but he does not deserve the five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B) for distribution in exchange for a "thing of value."

The prosecution apparently believes that the "thing of value" here was Mr. Tan's wish for a future sexual relationship with "Julie" and her daughters. However, the enhancement contemplates a specific exchange, not an inchoate wish to please someone's odd tastes. Application Note No. 1 indicates that this enhancement contemplates a "barter" or a "transaction." This language indicates a specific quid pro quo, not a hopeful act to interest another party. If Mr. Tan gets the enhancement here, it should apply in every pornography or information distribution case, because the sender is always trying to interest, alert, shock , please or gratify the other party. The resultant emotional response is not a "barter" or "transaction."

### B. Standard of Proof

The substantial five-level enhancement is especially unreasonable here in light of the Ninth Circuit Court of Appeals decision in United States v. Jordan, 256 F.3d 922, 926-28 (9th Cir. 2001), holding that enhancements with a substantial effect on the sentence length should be proven by "clear and convincing" evidence. See also, United States v. Valensia, 222 F.3d 1173, 1182 (9th Cir. 2000), cert. granted, judgment vacated and remanded by 532 U.S. 901 (2001), on remand, 299 F.3d 1068 (9th Cir. 2002) (sentence affirmed). The use of a questionable evidentiary standard for a significant sentence boost was one of the constitutionally objectionable features of mandatory guidelines addressed by United States v. Booker, 543 U.S. 220 (2005). See also, United States v. Staten, 450 F.3d 384 (9th Cir. 2006) (disproportionate effect on sentence requires facts proven by "clear and convincing evidence," which requirement survives Booker even though Guidelines are now advisory).

## III.    STATUTORY SENTENCING FACTORS

### A.    Nature and Circumstances of the Offense

This case presents a garden-variety child pornography distribution case, with the images few in number and fairly common in content. The only unusual feature was the actual trip to Anchorage. This conduct was the result of loneliness for an intimate adult relationship. It is true that the first chat, quoted at length in the PSR, referred to a sexual interest in Julie's daughters. Mr. Tan was desperately trying to inculcate interest in a person he believed was somewhat damaged by her past. But the bulk of the later chats concerned Mr. Tan's desire for intimacy with "Julie," his encouragement of her schooling, cooking, recipes and other normal adult topics. By the time he took the plane to Anchorage, Mr. Tan was truly anticipating a relationship with a woman his age.

One noteworthy facet of this offense is the cleverness and aggressiveness of the Anchorage police detective who pretended to be "Julie." While not entrapment, because Mr. Tan was predisposed, the government did orchestrate much of the conversation and events. The detective encouraged the distribution of more pornography by approving of the current images by words, "smiley faces" or "blushes" within the chat room. The offense is somewhat similar, though not in all respects, to the case of United States v. Gamache, 156 F.3d 1 (1st Cir. 1998) where the agent pretended to be an adult female encouraging the defendant to participate in sexual encounters with her children, although the defendant was primarily interested in intimacy with the adult woman.

B.  History and Circumstances of the Defendant

Mr. Tan had childhood difficulties, and has been depressed and lonely much of his life. But he has never been involved in crime or predatory activities. He worked hard. He achieved some educational goals. He helped his family. But he became, like many others, addicted to chat rooms for companionship.

In Mr. Tan's life, the attempt to interest the mother and meet her, including the travel to Anchorage, was aberrant conduct. Mr. Tan never had improper sexual contact with anyone. He lived his whole life studying, working and being with family.

Daniel Tan is vulnerable, because of his shyness, his stature and the nature of his offense, to abuse in prison. He has been hurt, threatened and robbed at Anchorage Jail and SeaTac Federal Detention Center. He has requested solitary confinement – no visits, no phone calls, no exercise, no television, no company – to avoid the extreme antagonism of the other inmates.

C.  Need for the Sentence Imposed

Congress has determined that this offense – distribution of child pornography – merits a mandatory minimum five-year sentence. 18 U.S.C. § 2252(a)(2) and (b)(1). The defense believes the statutory minimum is a substantial sentence, particularly for a man who has never offended before. The statutory minimum amply fulfills the objects of promoting deterrence, protection of the public and respect for the law. 18 U.S.C. § 3553(a)(2)(A),(B) and (C).

D.   Kind of Sentences Available

Probation and alternative sentences are not available here. However, because of a treaty with Canada, the place of imprisonment may be a Canadian prison. The Canadian consul in Seattle has already opened a file on Mr. Tan and provided counsel with the application process to invoke the treaty.

The indictment charges distribution of child pornography on three different days in three separate counts, although all the images were part of the same transaction and relationship. Although there are three counts, the sentencing statutes appear to require concurrent time in this case. 18 U.S.C. § 3584(a) and (b), § 3553(a).

IV.   CONCLUSION: DEFENSE REQUEST

The defense requests imposition of a sentence in line with the statutory minimum, five (5) years. This sentence is substantial, particularly for a first offender, and sufficiently addresses all the statutory objectives in 18 U.S.C. § 3553(a). However, the sentence of five years is not greater than necessary. It is an onerous sanction, but not institutional overkill.

DATED this 20th day of July 2006.

Respectfully submitted,

s/Sue Ellen Tatter
Assistant Federal Defender
601 West 5th Avenue, Suite 800
Anchorage, AK 99501
Phone:      907-646-3400
Fax:        907-646-3480
E-Mail:     sue_ellen_tatter@fd.org

Certification:
I certify that on July 20, 2006,
a copy of the **Sentencing Memorandum of the Defense** was served electronically on:

Audrey Renschen
Assistant United States Attorney
U.S. Attorney's Office
222 West Seventh Avenue #9, Room 253
Anchorage, AK  99513-7567

and a copy was hand delivered to:

Tim Astle
Probation Officer
U.S. Probation & Pretrial Services
222 W. 7th Avenue, #48, Room 168
Anchorage, AK 99513-7562


s/Sue Ellen Tatter_____